Matter of Stahl York Ave. Co., LLC v City of New York (2018 NY Slip Op 03653)





Matter of Stahl York Ave. Co., LLC v City of New York


2018 NY Slip Op 03653


Decided on May 22, 2018


Appellate Division, First Department


Kahn, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 22, 2018
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Dianne T. Renwick,J.P.
Rosalyn H. Richter
Sallie Manzanet-Daniels
Marcy L. Kahn
Cynthia S. Kern, JJ.


100999/14 5441 

[*1]In re Stahl York Avenue Co., LLC, Plaintiff/Petitioner-Appellant,
v
The City of New York, et al, Defendants/Respondents-Respondents. Friends of the Upper East Side Historic Districts, et al., Amici Curiae.



Plaintiff/petitioner appeals from the order and judgment (one paper), of the Supreme Court, New York County (Michael D. Stallman, J.), entered January 28, 2016, granting defendants/respondents' cross motion to deny the petition complaint, and dismissing the proceeding/action.




Shapiro Arato LLP, New York (Alexandra A.E. Shapiro, Eric S. Olney and Chetan A. Patil of counsel), and Kramer Levin Naftalis & Frankel LLP, New York (Paul D. Selver of counsel), for appellant.
Zachary W. Carter, Corporation Counsel, New York (Aaron M. Bloom and Claude S. Platton of counsel), for respondents.
Michael S. Gruen, New York, for amici curiae.



KAHN, J.


On this appeal in this hybrid article 78/plenary action, we are asked to determine whether the denial by respondent New York City Landmarks Preservation Commission (LPC) of the [*2]hardship application of petitioner, Stahl York Avenue Co., LLC (Stahl), to demolish two buildings included within a designated landmark was without rational basis and whether Stahl is entitled to money damages on the ground that the inclusion of the two buildings within that designated landmark constitutes an unconstitutional taking (see US Const Amends V, XIV; NY Const, art I, § 7).
I. Statement of Facts and Procedural Background
In a prior appeal, this Court affirmed the dismissal of an action brought by Stahl to annul the LPC's determination, as approved by the New York City Council, to expand a previously designated landmark to include the two buildings in question (see Matter of Stahl York Ave. Co. LLC v City of New York, 76 AD3d 290 [1st Dept 2010], lv denied 15 NY3d 714 [2010] [Stahl I]).
A. Landmark Designation Approval
In 1990, the LPC designated an entire block of tenement buildings known as the First Avenue Estate (FAE) as an historic landmark. The block in question includes 15 six-story buildings that were built in the early 1900s as "light-court model tenements" - one of only two existing full-block light-court tenement developments in the United States.[FN1]
On August 21, 1990, the New York City Board of Estimate voted six to five to approve the LPC's designation of most of the FAE as a landmark, excluding the two buildings at issue here.
In September 2004, Community Board No. 8 adopted a resolution in favor of amending the FAE landmark designation to include the two buildings in question.
In 2006, the LPC voted in favor of including the two buildings in the FAE landmark designation.
On February 1, 2007, the New York City Council unanimously approved the LPC's decision to include the two buildings in the FAE landmark designation.
On September 22, 2014, Stahl commenced Stahl I, an article 78 proceeding challenging the LPC's determination and the City Council's approval of that determination as arbitrary and capricious, in light of the 1990 determination to exclude the two buildings from the FAE landmark designation. This Court held that the LPC and the City Council could revisit the earlier determination and that the exclusion of the two buildings from that designation was the result of a politically motivated "bad backroom deal" made under intense pressure from a major developer (Stahl I, 76 AD3d at 296 [internal quotation marks omitted]). As we noted in Stahl I, in introducing the amendment to the designation to the full City Council the Speaker of the City Council made an observation to the effect that the earlier determination to exclude the buildings from the designation was "a bad decision based upon improper considerations which had nothing to do with the buildings' historical or cultural significance" (id.).
B. Stahl's Hardship Application
Stahl then sought from the LPC a certificate of appropriateness approving the demolition of the two buildings on the ground of insufficient return, in accordance with Title 25 of the Administrative Code of the City of New York (§ 25-301 et seq.) (Landmarks Law). Stahl represented that it was entitled to a certificate of appropriateness pursuant to section 25-309 of the Landmarks Law because the expenses incurred in operating the two buildings in question, both before and after the payment of real estate taxes, significantly exceeded the income that they generated, and that therefore it would be appropriate to demolish the buildings, build mixed-income condominium towers in their place, and use the proceeds from that redevelopment to [*3]perform renovations at the other buildings in the FAE.
In support of its hardship application, Stahl submitted two economic feasibility studies prepared by Cushman & Wakefield supporting its claim that there was no feasible scenario under which the buildings were capable of earning a "reasonable return" within the meaning of the Landmarks Law (Administrative Code § 25-309[a][1][a]). One of those two studies, issued in 2010, stated that the two buildings' units, 190 in total, each had small rooms, including bathrooms that required undersized tubs and toilets, tiny closets, and electrical systems that did not support modern usage, and that the buildings lacked sprinklers and other modern safety and security systems. According to that study, half of the 190 units were occupied and subject to rent stabilization or rent control, and the remaining units were vacant and could be leased at market rent. The study posited that if the necessary repairs and improvements were performed and the apartments within the two buildings, including the half subject to rent stabilization or rent control, were leased, their annual net return would be negative 2.87%, which would not meet the 6% minimum standard for "reasonable return" set by the LPC. According to the other study, issued in 2009, the vacant units in the two buildings, if improved, renovated and rerented, would yield an annual return of 1.19%. That study also concluded that without the improvements, the annual return yielded by the vacant units would be .614%. Both studies analyzed the projected return from the combined two buildings separately from the other properties within the FAE.
On May 20, 2014, the LPC denied Stahl's hardship application. The LPC commissioners reasoned that the proper scope for reasonable return analysis was the FAE property as a whole. The LPC further opined that in computing depreciation allowance, Stahl mistakenly considered projected renovation costs not only for the 53 apartments that were vacant at the time that the LPC voted to confer landmark status upon the two buildings in 2006, but also for 44 additional apartments that became vacant after the inclusion of the two buildings in the landmark designation. The LPC observed that Stahl's anticipated renovation costs for apartments that Stahl had warehoused subsequently to the landmark redesignation was a self-imposed hardship. The LPC also rejected Stahl's "cost approach" accounting methodology for projecting postrenovation assessed value, finding that an "income approach" was more appropriate for rental property. The LPC performed an alternative reasonable return calculation using Stahl's assumptions and methods, which calculation showed that the two buildings were capable of earning a reasonable return.
C. The Instant Case
On September 22, 2014, Stahl commenced this hybrid article 78/plenary action against respondents City of New York and the LPC and its chairwoman, challenging the denial of its hardship application and seeking money damages [FN2]. Stahl maintained that the inclusion of the [*4]two buildings in question within the FAE landmark designation amounted to a taking in violation of the federal and state constitutions (see US Const Amends V, XIV; NY Const, art I, § 7). Stahl argued that the LPC reached the false and unreasonable conclusion that Stahl could earn more than a 6% return from the two buildings by misapplying its own standards and by refusing to consider the full costs that Stahl would incur to renovate the buildings. Stahl also argued that the entire FAE should not have been considered and that the LPC erred in using
the income approach in its calculations rather than using the cost approach, as it had done in granting the hardship application of another developer in 1988.
With regard to the taking issue, Stahl argued that before 2006, the two properties in question could have been sold for more than $100 million - - and twice that much had they been redeveloped. Stahl maintained that the 2006 public hearing held by LPC prior to amending the FAE landmark designation improperly focused on concerns of politically influential local residents who sought to block any development in order to protect their own special interests and that LPC commissioners repeatedly made comments that prejudiced its application. Stahl also asserted that the LPC's 2006 determination to include the buildings within the landmark designation had had a severe economic impact on the value of the buildings, preventing it from earning a reasonable rate of return, and had interfered with its investment-backed expectations.
Respondents answered and cross-moved to dismiss the petition and complaint, arguing that the LPC had properly denied Stahl's hardship application. They contended that the relevant improvement parcel for purposes of determining the hardship application embraced the whole FAE, that the LPC's use of the income approach was proper, and that there was no unconstitutional taking because Stahl could continue to operate the buildings with low-scale rental units.
As indicated, Supreme Court dismissed the petition and granted respondents' cross motion to dismiss the taking claim. The court found that the relevant property for both the hardship and taking analyses was the FAE as a whole, that the income approach was not improper, and that the LPC had rationally concluded that Stahl failed to demonstrate a hardship.
II. Discussion
A. Petitioner's Claim that Hardship Application Denial Was Irrational
1. Petitioner's contentions
On this appeal, Stahl contends that the LPC reached a false
and unreasonable conclusion in determining that Stahl could earn
more than a 6% return from the two buildings in question.
Further, Stahl argues, the LPC erred in finding that the relevant
improvement parcel was the entire FAE rather than the two
buildings in question and in using the income approach rather
than the cost approach.
2. Legal Standards
In reviewing an administrative agency determination, courts must ascertain whether there is a rational basis for the action in question or whether it is arbitrary and capricious, i.e., taken without sound basis in reason or regard to the facts (see Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d [*5]222, 231 [1974]).
Section 25—309(a) of the Landmarks Law provides in relevant part that the LPC "shall" make a preliminary determination of insufficient return when an applicant for a permit "to demolish any improvement located on a landmark site" is filed "and the applicant establishes to the satisfaction of the commission that . . . the improvement parcel (or parcels) which includes such improvement, as existing at the time of the filing of such request, is not capable of earning a reasonable return."
The "Definitions" section of the Landmarks Law (§ 25-302) contains the following relevant definitions:
"Landmark" is defined as any landmarked "improvement"
(§ 25-302[n]);
"Improvement" is defined as "[a]ny building, structure, place, work of art or other object constituting a physical betterment of real property, or any part of such betterment"
(§ 25-302[i]);
"Landmark Site" is defined as "[a]n improvement parcel or part thereof on which is situated a landmark and any abutting improvement parcel or part thereof used as and constituting part of the premises on which the landmark is situated, and which has been designated as a landmark site . . . " (§ 25-302[o]); and
"Improvement parcel" is defined as "[t]he unit of real property which (1) includes a physical betterment constituting an improvement and the land embracing the site thereof, and (2) is treated as a single entity for the purpose of levying real estate taxes" (§ 25-302[j]).
3. Discussion
The LPC was entitled to require Stahl to establish that it could not earn a reasonable return on the entire landmark that it sought to alter, not the individual buildings in question. Although the Landmarks Law definitions, read together, appear ambiguous as to how to define a relevant "improvement parcel" for purposes of the instant hardship application, the LPC's interpretation was rational.
The entire FAE constitutes one landmark and one landmark site. Thus, the entire FAE development contains one "improvement," which is defined as "a physical betterment of real property, or any part of such betterment" (§ 25-302[i]). Stated otherwise, the FAE constitutes one unit of real property that includes that physical betterment.
Furthermore, the LPC did not confer a landmark designation on the 2 buildings in question that is separate from the earlier designation of the other 13 buildings within the FAE. Rather, the LPC chose to protect the FAE in its entirety by conferring a single landmark redesignation on the entire parcel.
Contrary to Stahl's argument, the entire landmark constitutes one improvement for hardship purposes, even though Stahl did not intend to demolish the entire landmark. The definition of "improvement" includes "any part of [the] betterment" of the real property in question (§ 25-302[i]). Thus, although the part of the improvement that Stahl sought to demolish was 2 of the 15 buildings within the FAE, Stahl was still required to prove that the entire "improvement parcel," which includes the improvement in question, was not capable of earning a reasonable return.
Furthermore, the record reflects that the entire FAE was one "unit of real property" treated as a single entity for purpose of levying real estate taxes, i.e., the "improvement parcel." The FAE consists of four tax lots, but all four are within the one tax block comprising the FAE landmark site. This is further demonstrated by the fact that from 2007 to 2012, with respect to the FAE, Stahl made a single tax filing applicable to the entire tax block.
Moreover, the LPC also analyzed the hardship application solely with respect to tax lot 22 (which contains only the two buildings in question) and rationally determined that no hardship [*6]was demonstrated under a separate analysis of that tax lot because Stahl failed to demonstrate that those buildings, considered alone, were "not capable of earning a reasonable return" (Administrative Code § 25-309[a][1][a]).
Notwithstanding Stahl's argument to the contrary, it was not irrational for the LPC to exclude from its analysis the renovation costs for the 44 apartments within the two buildings that were kept vacant after the 2006 landmark designation. That argument, rejected by both the article 78 court and the federal courts (see Stahl, 2015 WL 2445071 at *16, 2015 US Dist LEXIS 66660 at *42-*46, 641 Fed Appx at 72), is unavailing. The LPC rationally chose values for the relevant variables, including rental rates, vacancy rates, collection loss, and operating expenses, to calculate whether the buildings were capable of earning a reasonable return. Moreover, the LPC's calculations reflected the rational rejection of Stahl's own assumed values. Because the Landmarks Law defines "capable of earning a reasonable rate of return" as "[h]aving the capacity, under reasonably efficient and prudent management, of earning a reasonable return" (Administrative Code § 25—302[c]), the LPC appropriately concluded that Stahl had demonstrated inefficient management, by, inter alia, its imprudent decision to warehouse 44 apartments at the landmarked buildings in the hope of demolition.
Furthermore, the LPC's use of the "income approach" rather than the "cost approach" in making its determination was rational. The LPC neither contradicted its own precedent nor acted arbitrarily and capriciously in concluding that the income approach was the more appropriate method to measure assessed value in Stahl's rental scenarios (see Stahl, 2015 WL 2445071 at *16, 2015 US Dist LEXIS at *42-*46, 641 Fed Appx 68 at 72). The LPC demonstrated that its use of the income approach comported with the valuation method used by taxing authorities, whereas the cost approach would generate a higher assessed value for the buildings, resulting in higher real estate taxes (which would be contrary to efficient and prudent management practices). Moreover, even though the LPC had, in a 1998 hardship decision, used the cost approach to measure assessed value, in that case the owner sought to recoup its renovation costs by selling, rather than by renting, as petitioner seeks to do (see Stahl, 641 Fed Appx at 72).
In any event, the record reveals that the LPC also performed more than 20 additional reasonable-return calculations using many of the assumptions that Stahl preferred, as well the "cost approach," all of which showed that the buildings were capable of earning a reasonable return. Thus, as the Second Circuit found, the errors Stahl points to do not materially affect the property's projected profit margin, since, even using petitioner's values and proposed methodology, the property's rate of return would still be above the 6% threshold for hardship relief under all renovation scenarios (641 Fed Appx at 72).
Finally, to the extent that Stahl complains that the LPC evinced prejudice against it by way of its commissioners' comments at the 2006 public hearings reflecting concern for preserving the buildings, that complaint is unsupported by the hearing record, which does not reflect any prejudice against Stahl. Rather, the record suggests that the LPC's members were appropriately familiar with the subjects of their regulation, had advance knowledge of the facts and law surrounding the application, and were committed to the goal for which their agency was created, i.e., landmarks preservation (see generally Matter of 1616 Second Ave. Rest. v New York State Liq. Auth., 75 NY2d 158, 162 [1990]).
B. Petitioner's Unconstitutional Taking Claim
Stahl's other principal argument is that the LPC's inclusion
of the two buildings in the FAE landmark designation amounted to
an unconstitutional taking.
1. Legal Standards
The takings clause of the federal constitution prohibits
governmental taking of "private property . . . for public use,
without just compensation" (US Const Amend V).
A per se taking occurs if a regulation deprives the owner of
all economically beneficial use of the property (see Lucas v
South Carolina Coastal Council, 505 US 1003, 1019 [1992]), or a
regulation may rise to the level of a taking under a multi-factor
inquiry outlined in Penn Cent. Transp. Co. v City of New York
(438 US 104 [1978]).
In Penn Central, the United States Supreme Court instructed
that most regulatory takings cases should be considered on an ad
hoc basis, with three primary factors to be weighed: the
regulation's economic impact on the claimant, the regulation's
interference with the claimant's reasonable investment-backed
expectations, and the character of the government action (id. at
124).
The Penn Central multi-factor inquiry focuses on the
magnitude of the economic impact of a regulatory action and the
extent of that regulation's interference with property rights to
determine if a regulatory action constitutes a taking (see Lingle
v Chevron U.S.A. Inc., 544 US 528, 540 [2005]). In Penn
Central, the owner of Grand Central Terminal argued that a
restriction on its ability to add an office building on
top of the station amounted to a taking of its air rights, but
the Supreme Court concluded that the correct unit of analysis was
the owner's "rights in the parcel as a whole" (438 US at
130—131). The Court noted that claimants cannot establish a
takings claim "simply by showing that they have been denied the
ability to exploit a property interest that they heretofore had
believed was available for development" (id. at 130).
In the recent case of Murr v Wisconsin ( — US -, 137 S Ct
1933 [2017]), the owners of two adjacent lots (referred
to by the Court as Lots E and F) located alongside a river wished
to sell Lot E but could not sell it separately from Lot F due to
state regulations that forbade the sale of a parcel with less
than an acre of land suitable for development. Lot E, by itself,
did not meet that requirement, although it did meet the
requirement when combined with Lot F. The owners sued the state,
claiming that the state's regulatory action amounted to an
unconstitutional taking.
The Murr Court treated the two lots as a single parcel in
concluding that regulations preventing the separate sale of the
two adjacent lots did not amount to an uncompensated taking. The
Court observed that the establishment of lot lines was not
dispositive of whether parcels should be considered separately
or as a whole in a takings analysis. The Court reasoned that lot
lines are established with varying degrees of formality among the
states, and are often subject to easy adjustment by landowners
with minimal governmental oversight, leading to the risk of
gamesmanship by landowners (Murr, 137 S Ct at 1948).
Rather, the Murr Court opined that the proper test for
determining whether parcels should be treated separately or as a
whole for takings analysis purposes is objective in nature and
should determine whether reasonable expectations about property
ownership would lead a landowner to anticipate that its holdings
would be treated as one parcel or as separate lots. The Court
then set forth a three-factor test for this purpose. First,
courts should give substantial weight to the property's
treatment, and in particular how it is bounded or divided, under
state and local law. Second, courts should look to the
property's physical characteristics, including the physical
relationship of any distinguishable tracts, the topography,
and the surrounding human and ecological environment. Third,
courts should assess the property's value under the
challenged regulation, with special attention to the effect
of burdened land on the value of other holdings (Murr, 137 S Ct
at 1944—1947).
Applying that three-factor test, the Murr Court first found
that state and local regulations had effectively merged the two
lots into one parcel. Second, the Court found that the two lots
were contiguous and that their narrow shape made it reasonable to
expect that their potential uses would be limited. The Court
explained that because the lots were located along a river, the
owners could reasonably anticipate that the lots would be subject
to federal, state and local regulations that would affect their
enjoyment of the property. Third, the Court determined that the
prospective value that Lot E brought to Lot F supported
considering them as one parcel (id. at 1948-1949).
Having concluded that the property in question should be
considered as a whole, the Murr Court found that there had been
no taking, as the regulations in question did not result in
depriving the owners of all economically beneficial use of their
property. The Court arrived at this conclusion by applying
the "more general test of Penn Central," which it found did not
support the conclusion that the landowners had suffered a
taking (id. at 1949). Specifically, the Court first found that
an expert appraisal relied upon by the state courts refuted any
claim that the economic impact of the regulation was severe.
Second, the Court reasoned that the owners could not have claimed
that they reasonably expected to sell or develop their lots
separately, given that the lots were subject to regulations
forbidding such separate sale and development, which regulations
predated the owners' acquisition of both lots. Third, the Court
found that the governmental action in question was a reasonable
land-use regulation, enacted as part of a coordinated federal,
state and local effort to preserve the river and surrounding land
(id.).
In this case, application of the Murr analysis leads to the
conclusion that all of the lots within the FAE, including the two
buildings at issue, should be treated as one parcel for taking
analysis purposes. First, although the FAE is divided by lot
lines (which, according to Murr, is not a proper basis
for determining whether the land in question should be treated as
one unified parcel), the City has placed all of those lots
within one tax block and has designated it as one unified
landmark. Second, the lots are contiguous and contained within
one city block, and all of the buildings within the FAE share a
common historical and architectural significance when treated as
a unified parcel, i.e., the distinction of being one of the only
two existing light-court model tenements in this country. Third,
the only discernable adverse effect of including the two
buildings in question within the designated landmark on the value
of the property as a whole is one manufactured by the owner itself in warehousing the 44 apartments within those two
buildings.
Considering the FAE property as a whole, here, as in Murr,
the regulatory action at issue, which, in this case, is the LPC's
amendment of the landmark designation to include the two
buildings in question, did not result in complete deprivation of
the owner's economically beneficial use of its property. The
owner is still free to rent units within all of the buildings
in the FAE, including the two buildings in question.
Application of the "more general" Penn Central test also
supports the conclusion that petitioner has not suffered a
taking. First, the extension of the FAE landmark designation to
include the two buildings in question did not result in any
further economic impact on Stahl beyond that resulting from
preexisting legal restrictions limiting Stahl's use of the
property even absent landmark status, such as rent control and
rent stabilization. Second, Stahl's reasonable investment-
backed expectations were not destroyed by the inclusion of the
two buildings within the FAE landmark designation. As the LPC
determined, the buildings in question are capable of earning
a reasonable return, limiting the designation's economic impact
on petitioner. Third, the character of the government action in
question favors the LPC, since, as the Court in Penn Central
found, the "preservation of landmarks benefits all New York
citizens and all structures" and "improv[es] the quality of life
in the city as a whole" (id. at 134).
Accordingly, the order and judgment (one paper), of the
Supreme Court, New York County (Michael D. Stallman, J.), entered
January 28, 2016, granting defendants/respondents' cross motion
to deny the petition-complaint, and dismissing the proceeding-
action, should be affirmed, without costs.
All concur.
Order and judgment (one paper), Supreme Court, New York County (Michael D. Stallman, J.), entered January 28, 2016, affirmed, without costs.
Opinion by Kahn, J. All concur.
Renwick, J.P., Richter, Manzanet-Daniels, Kahn, Kern, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: MAY 22, 2018
CLERK



Footnotes

Footnote 1: The other such tenement development, located on East 78th Street, is known as the "York Avenue Estate." It received landmark designation in 1990.

Footnote 2: On the same day, Stahl commenced an action against the City of New York and the LPC in the United States District Court for the Southern District of New York seeking an order annulling and setting aside the 2006 landmark redesignation and the denial of its hardship application, awarding compensatory damages, and awarding attorneys' fees and costs. That action was dismissed in a written opinion and order (Stahl York Ave. Co., LLC v City of New York, et al., 2015 WL 2445071, 2015 US Dist Lexis 66660 [SD NY, No. 14 Civ. 7665 (ER), May 21, 2015]), which was affirmed by the United States Court of Appeals for the Second Circuit (641 Fed Appx 68 [2d Cir 2016]). On October 31, 2016, the United States Supreme Court denied Stahl's petition for a writ of certiorari (—- US , 137 S Ct 372 [2016]).